Citation Nr: 1829321 
Decision Date: 05/31/18 Archive Date: 06/12/18

DOCKET NO. 08-19 868 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri


THE ISSUES

1. Entitlement to a rating in excess of 10 percent for chondromalacia of the left knee with limitation of extension.

2. Entitlement to a rating in excess of 10 percent for right knee residuals of anterior cruciate ligament (ACL) and meniscal surgeries with degenerative joint disease (DJD) prior to November 24, 2015.

3. Entitlement to a rating in excess of 10 percent prior to November 24, 2015 for right knee limitation of extension.

4. Entitlement to a rating in excess of 20 percent as of November 24, 2015 for right knee limitation of extension, DJD, and residuals of ACL and meniscal surgeries. 

5. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).



REPRESENTATION

Appellant represented by: Disabled American Veterans



ATTORNEY FOR THE BOARD

E. Ko, Associate Counsel


INTRODUCTION

The Veteran had active service from June 1962 to June 1965. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from a July 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Louis, Missouri that continued a 10 percent rating for residuals, ACL and meniscal, right knee surgery with DJD and 10 percent rating for chondromalacia of the left knee. In a September 2012 rating decision, a separate 10 percent rating for right knee limitation of extension was granted, effective March 29, 2007. In a November 2015 rating decision, the RO found that separate evaluations for surgical residuals of the right knee meniscal surgery and for right knee limitation of extension were not allowed and instead assigned a 20 percent rating, effective November 24, 2015 under Diagnostic Code 5258 for right knee with limitation of extension, DJD with residuals of ACL and meniscal surgery. 

In a July 2016 decision, the Board denied entitlement to a rating in excess of 10 percent for chondromalacia of the left knee with limitation of extension, denied a rating in excess of 10 percent for right knee residuals of ACL and meniscal surgeries with DJD for the period prior to November 24, 2015, denied a rating in excess of 10 percent for right knee limitation of extension prior to November 24, 2015, denied a rating in excess of 20 percent for a right knee limitation of extension with DJD and residuals of ACL and meniscal surgeries as of November 24, 2015, denied a TDIU, and granted a separate 10 percent rating for right knee limitation of flexion from June 30, 2014 to November 3, 2015. 

The Veteran appealed to the United States Court of Appeals for Veterans Claims. In a Joint Motion for Partial Remand, the parties appealed all of the Board's June 2016 decision except for the determination in which a separate 10 percent rating for right knee limitation of flexion was granted. The parties agreed that they did not seek to disturb the Board's award of a separate 10 percent rating for right knee limitation of flexion. In an April 2017 Order, the Court granted the Joint Motion for Partial Remand, and remanded the matters identified in the Joint Motion for action consistent with the terms of the Joint Motion. The appeal as to the remaining issue was dismissed.

The Board remanded the case in June 2017 for further development.

In a January 2018 rating decision, the RO granted separate compensable ratings for limited flexion due to chondromalacia of the left knee and right knee scarring associated with the right knee disability, during the pendency of this appeal. The record does not reflect that the Veteran has disagreed with the January 2018 rating decision and the Board notes that the time allowed for disagreement has not yet expired. Thus, any issue regarding the award of these two disability ratings is not before the Board for appellate review at this time.


FINDINGS OF FACT

1. Throughout the appeal period, the Veteran's left knee disability has been manifested by limitation of flexion of no less than 85 degrees with pain and no limitation in extension. 

2. From March 29, 2007 to November 23, 2015, the Veteran's right knee with residuals of ACL and meniscal surgeries with DJD has been manifested by surgical residuals of joint pain, stiffness, weakness, locking, swelling, and giving way.

3. From March 29, 2007 to November 23, 2015, the Veteran's right knee limitation of extension was not limited to 15 degrees.

4. From November 24, 2015 to August 14, 2017, the Veteran's right knee did not manifest limitation of extension to at least 10 degrees, but was manifested by surgical residuals of joint pain, stiffness, weakness, locking, swelling, and giving way.

5. As of August 15, 2017, the Veteran's right knee disability manifested extension limited to 15 degrees with pain. 

6. The Veteran's service-connected disabilities, which affect a single body system, are therefore considered "one disability" rated at 70 percent for TDIU purposes. 

7. The evidence does not demonstrate that the Veteran's service-connected disabilities preclude him from securing or following substantially gainful employment. 


CONCLUSIONS OF LAW

1. The criteria for a disability rating in excess of 10 percent for a left knee disability have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.2, 4.3, 4.6, 4.7, 4.10, 4.27, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5014-5261 (2017).

2. From March 29, 2007 to November 23, 2015, the criteria for a disability rating in excess of 10 percent for right knee with residuals of ACL and meniscal surgeries with DJD have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.2, 4.3, 4.6, 4.7, 4.10, 4.27, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5010-5259 (2017).

3. Prior to November 24, 2015, the criteria for a disability rating in excess of 10 percent for right knee limitation of extension have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.2, 4.3, 4.6, 4.7, 4.10, 4.27, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5003-5261 (2017).

4. From November 24, 2015, the criteria for a rating in excess of 20 percent for right knee with residuals of ACL and meniscal surgeries with DJD have not been met; the criteria for a separate disability rating for right knee limitation of extension have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.2, 4.3, 4.6, 4.7, 4.10, 4.27, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5010-5258 (2017).

5. As of August 15, 2017, the criteria for a separate 20 percent disability rating for right knee limitation of extension have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.2, 4.3, 4.6, 4.7, 4.10, 4.27, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5261 (2017).

6. The criteria for entitlement to a TDIU have not been met. 38 U.S.C.A. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.340, 3.341, 4.16 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and to Assist

Pursuant to the Veterans Claims Assistance Act (VCAA), VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C. §§ 5102, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 (2017).

Neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).

Increased Ratings

The Veteran is seeking higher disability ratings for his service-connected left knee disability, his service-connected right knee residuals of ACL and meniscal surgeries with DJD, and his service-connected right knee limitation of extension. 

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of, or incident to, military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise the lower rating will be assigned. 38 C.F.R. § 4.7.

The Veteran's entire history is to be considered when making disability evaluations. See 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). The Board acknowledges that a claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Hart v. Mansfield, 21 Vet. App. 505, 509-510 (2007). 

A layperson is competent to report on his or her current symptoms. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). 

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in the parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion.

Under 38 C.F.R. § 4.40, functional loss may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the claimant on motion. Disability of the musculoskeletal system is the inability to perform normal working movement with normal excursion, strength, speed, coordination, and endurance, and that weakness is as important as limitation of motion, and that a part that becomes disabled on use must be regarded as seriously disabled. A little used part of the musculoskeletal system may be expected to show evidence of disuse, through atrophy, for example. 38 C.F.R. § 4.40.

The provisions of 38 C.F.R. §§ 4.45 and 4.59 also contemplate inquiry into whether there is limitation of motion, weakness, excess fatigability, incoordination, and impaired ability to execute skilled movements smoothly, and pain on movement, swelling, deformity, or atrophy of disuse. Instability of station, disturbance of locomotion, and interference with sitting, standing, and weight-bearing are also related considerations. The Court has held that diagnostic codes predicated on limitation of motion require consideration of a higher rating based on functional loss due to pain on use or due to flare-ups. 38 C.F.R. §§ 4.40, 4.45, 4.59; Johnson v. Brown, 9 Vet. App. 7 (1997); DeLuca v. Brown, 8 Vet. App. 202, 206 (1995).

The provisions of 38 C.F.R. § 4.59, which relate to painful motion, are not limited to arthritis and must be considered when raised by the claimant or when reasonably raised by the record. Burton v. Shinseki, 25 Vet. App. 1 (2011). The intent of the rating schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59. Painful motion is considered limited motion at the point that pain actually sets in. See VAOPGCPREC 9-98.

Separate disability ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition was not "duplicative of or overlapping with the symptomatology" of the other condition. See Esteban v. Brown, 6 Vet. App. 259, 262 (1994). However, pyramiding, that is the evaluation of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when evaluating a Veteran's service-connected disability. 38 C.F.R. § 4.14 (2015).

The Veteran's left knee disability has been currently evaluated as 10 percent disabling under 38 C.F.R. § 4.71a, Diagnostic Codes 5014-5261, effective January 30, 1991.

The Veteran received a 10 percent disability rating for right knee residuals of ACL and meniscal surgeries with DJD under 38 C.F.R. § 4.71a, Diagnostic Codes 5010-5259, effective from January 30, 1991 to November 23, 2015. 

The Veteran received a separate 10 percent disability rating for right knee limitation of extension under 38 C.F.R. § 4.71a, Diagnostic Codes 5003-5261, effective from March 29, 2007 to November 23, 2015. 

The Veteran received a 20 percent disability rating for right knee with limitation of extension, DJD and residuals of ACL and meniscal surgeries under 38 C.F.R. § 4.71a, Diagnostic Codes 5010-5258, effective November 24, 2015. 

The Veteran is also in receipt of a temporary total evaluation for right knee residuals of ACL and meniscal surgeries with DJD under 38 C.F.R. § 4.30, effective from March 26, 2015 to May 31, 2015, left knee limitation of flexion under 38 C.F.R. § 4.71a, Diagnostic Code 5260, and right knee residual surgical scarring under 38 C.F.R. § 4.118, Diagnostic Code 7805. These disability ratings are not on appeal. 

Historically, in a July 1996 rating decision, the Veteran was granted service connection for residuals of right knee surgery with DJD and awarded a 10 percent disability rating under 38 C.F.R. § 4.71a, Diagnostic Code 5259. In a July 2007 rating decision, Veteran's residuals of a right knee surgery with DJD was recharacterized as right knee residuals of ACL and meniscal surgery with DJD and assigned a 10 percent rating under 38 C.F.R. § 4.71a, Diagnostic Codes 5010-5259. In a September 2012 rating decision, he was assigned a separate 10 percent disability rating for right knee limitation of extension associated with a right knee residuals of ACL and meniscal surgery with DJD under 38 C.F.R. § 4.71a, Diagnostic Codes 5003-5261. 

In a November 27, 2015 rating decision, the RO found that it had erred in awarding a separate rating for limitation of extension where the Veteran was already in receipt of an evaluation for surgical residuals. To rectify the error, the RO combined the separate ratings under right knee with limitation of extension, DJD, and residuals of ACL and meniscal surgeries. Accordingly, a 20 percent disability rating was assigned from November 24, 2015, the date the error was identified under 38 C.F.R. § 4.71a, Diagnostic Codes 5010-5258. 

Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the evaluation assigned. In the selection of code numbers assigned to disabilities, injuries will generally be represented by the number assigned to the residual condition on the basis of which the rating is determined. With injuries and diseases, preference is to be given to the number assigned to the injury or disease itself; if the rating is determined on the basis of residual conditions, the number appropriate to the residual condition will be added, preceded by a hyphen. 38 C.F.R. § 4.27 (2015). 

Normal range of motion of the knee is to zero degrees extension and to 140 degrees flexion. See 38 C.F.R. § 4.71a, Plate II. 

In this case, under Diagnostic Code 5014, osteomalacia is rated upon limitation of motion of the affected part as degenerative arthritis. 38 C.F.R. § 4.71a, Diagnostic Code 5014. 

Diagnostic Code 5010 represents arthritis due to trauma, substantiated by x-ray findings, which in turn is to be rated under Diagnostic Code 5003 as degenerative arthritis. 38 C.F.R. § 4.71a. Degenerative arthritis established by X-ray findings will be rated based on limitation of motion under the appropriate diagnostic code(s) for the specific joint(s) involved. When, however, the limitation of motion of the specific joint(s) involved is noncompensable under the appropriate diagnostic code(s), a 10 percent rating is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added under Diagnostic Code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. In the absence of limitation of motion, a 10 percent evaluation is warranted if there is X-ray evidence of involvement of two or more major joints or two or more minor joint groups and a 20 percent evaluation is authorized if there is X-ray evidence of involvement of two or more major joints or two or more minor joint groups and there are occasional incapacitating exacerbations. Id., Diagnostic Code 5003 (2015).

Note 1 provides that the 20 percent and 10 percent ratings based on X-ray findings, above, will not be combined with ratings based on limitation of motion. 

Note 2 provides that the 20 percent and 10 percent ratings based on X-ray findings, above, will not be utilized in rating conditions listed under diagnostic codes 5013 to 5024, inclusive.

A veteran who has arthritis and instability of the knee may be rated separately under Codes 5003 and 5257. Evaluation of a knee disability under both of those Codes does not amount to pyramiding. However, a separate rating must be based on additional compensable level of disability. 38 C.F.R. § 4.14 ; VAOPGCPREC 23-97 (July 1, 1997), 62 Fed. Reg. 63604 (1997); Esteban v. Brown, 6 Vet. App. 259 (1994).

Diagnostic Code 5257 rates on the basis of recurrent subluxation or lateral instability. 38 C.F.R. § 4.71a, Diagnostic Code 5257 (2015). Slight recurrent subluxation or lateral instability of the knee is rated as 10 percent disabling; moderate recurrent subluxation or lateral instability of the knee is rated as 20 percent disabling; and severe recurrent subluxation or lateral instability of the knee is rated as a maximum 30 percent disabling. Id.

The Board observes that the words "slight," "moderate," and "severe" are not defined in the rating schedule; rather than applying a mechanical formula, VA must evaluate all the evidence to the end that its decisions are equitable and just. 38 C.F.R. § 4.6 (2015). Use of terminology by VA examiners or other physicians, although an element of evidence to be considered by the Board, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision regarding an increased rating. 38 C.F.R. §§ 4.2, 4.6 (2017).

Separate ratings may also be assigned for limitation of flexion and limitation of extension of the same knee. Specifically, where a Veteran has both a compensable level of limitation of flexion and a compensable level of limitation of extension of the same leg, the limitations must be rated separately to adequately compensate for functional loss associated with injury to the leg. VAOPGCPREC 9-04 (Sept. 17, 2004), 69 Fed. Reg. 59990 (2005).

Under Code 5260, which contemplates limitation of leg flexion, a 0 percent rating is warranted for flexion limited to 60 degrees; a 10 percent rating is warranted for flexion limited to 45 degrees; a 20 percent rating is warranted for flexion limited to 30 degrees; and a 30 percent rating is warranted for flexion limited to 15 degrees. 38 C.F.R. § 4.71a, Code 5260. 

Under Code 5261, which contemplates limitation of extension of the leg, a 0 percent rating is warranted for extension limited to 5 degrees; a 10 percent rating is warranted for extension limited to 10 degrees; a 20 percent rating is warranted for extension limited to 15 degrees; a 30 percent rating is warranted for extension limited to 20 degrees; a 40 percent rating is warranted for extension limited to 30 degrees; and a 50 percent rating is warranted for extension limited to 45 degrees 

Additionally, the United States Court of Appeals for Veterans Claims (Court) recently held that evaluation of a knee disability under Codes 5257 or 5261 (and by Code 5260) or both does not, as a matter of law, preclude separate evaluation of a meniscal disability of the same knee under Codes 5258 or 5259. Lyles v. Shulkin, No. 16-0994 (Vet. App. Nov. 29, 2017). Entitlement to a separate evaluation depends on whether the manifestations of disability for which a separate evaluation is being sought have already been compensated by an assigned evaluation under a different Code. In the context of evaluating musculoskeletal disabilities based on limitation of motion, a manifestation of disability has not been compensated, for separate evaluation and pyramiding purposes, if that manifestation did not result in an elevation of the evaluation under 38 C.F.R. §§ 4.40 and 4.45 pursuant to the principles set forth in DeLuca, 8 Vet. App. at 202. Id. 

Diagnostic Code 5258 provides for a 20 percent evaluation on the basis of dislocated semilunar cartilage with frequent episodes of "locking," pain, and effusion into the joint. 38 C.F.R. § 4.71a, Diagnostic Code 5258 (2015). This is the only available evaluation under Diagnostic Code 5258.

A 10 percent evaluation is warranted for symptomatic removal of the semilunar cartilage. 38 C.F.R. § 4.71a, Diagnostic Code 5259. This is the only available evaluation under Diagnostic Code 5259.

Other diagnostic codes pertaining to the knee and leg that provide for higher than 10 percent evaluations do not apply in this case, as the evidence does not demonstrate ankylosis of the knee (Diagnostic Code 5256) or impairment of the tibia and fibula (Diagnostic Code 5262).

Factual Background

In a September 2005 note, Darren Haskell, M.D., stated that he had seen and evaluated the Veteran for several problems, including morbid obesity, impaired glucose tolerance, hypertension, carcinoid, and peptic ulcer disease. He also stated that the Veteran required continued medical and physical therapy for his osteoarthritis of the knees and hips.

A March 2007 private treatment record noted that the Veteran had bilateral knee problems, but that his right knee was currently his most significant problem. The Veteran reported right knee pain and stiffness. He could only walk for 15 to 20 minutes at a time based on his knee and hip pain.

In two May 2007 lay statements, the Veteran reported that his knees had worsened and limitations in standing and walking, to include increasing pain with walking, inability to squat, and increasing pain with using stairs.

At a June 2007 VA examination, the Veteran reported right knee pain and intermittent swelling, grinding, and popping with pain, especially after standing and walking for more than 15 minutes, and left knee discomfort and tenderness. He stated that he fell at a picnic a year prior because his right leg gave out on him, but did not go to the hospital. The Veteran stated that he was limited in his ability to lift and carry weights and was unable to squat or kneel. 

Upon examination, the Veteran had no gross clinical instability bilaterally, full extension bilaterally, flexion at 91 degrees with pain and stiffness in the right knee, and flexion at 111 degrees with pain and stiffness in the left knee. No additional functional loss was found upon repetitive use testing. The examiner noted that the Veteran had a mild right-sided limp, but found that he was independently ambulatory. 

In a November 2007 lay statement, the Veteran stated that he was required to wear a knee brace constantly to maintain his stability. He asserted that he fell in 2006 because he was not wearing a brace and lost his balance. He reported chronic swelling with constant grinding and popping sounds and difficulties walking (i.e., able to walk less than one city block at a time).

The Veteran underwent a December 2007 VA examination for his right knee. He reported constant pain in his right knee, although the examiner noted that the Veteran did not appear to be in pain based on his facial expression, and right knee weakness and stiffness. He also stated that he regularly used a knee brace and occasionally used a cane to walk. Range of motion testing revealed flexion at 110 with pain and full extension. No additional functional loss upon repetitive use testing was found. No objective evidence of painful motion, edema, effusion, instability, weakness, tenderness, redness, heat, abnormal movement, or guarding of movement was found. No ankylosis was noted.

The Veteran underwent a May 2008 VA examination for his left knee which showed normal muscle strength and no instability. He reported intermittent weakness and swelling in his left knee, increased left knee pain after walking more than 10 minutes, and "lots of noise" within the left knee. Range of motion testing revealed flexion at 85 degrees. Extension was not recorded. 

The Veteran underwent an August 2012 VA examination for his knees; however, the Board found that this examination was inadequate for rating purposes in an April 2014 decision because the examiner's findings as to the left knee range of motion was internally inconsistent and the examiner did not evaluate the stability of the knees. As such, the Board will not discuss or rely on those objective findings. However, the Board acknowledges that the Veteran's right knee demonstrated extension limited to 10 degrees which formed the basis for the separate evaluation that the RO initially assigned. In addition, the Veteran reported symptoms of right knee weakness, giving way, stiffness, swelling, and locking. He also described having left knee weakness due to his compensating for greater pain in the right knee.

At a June 2014 VA examination for both knees, the Veteran reported daily bilateral knee pain, which was exacerbated after walking for 5 minutes or standing for 10 minutes. He also reported using a right knee brace regularly for his right knee pain and a cane constantly for his bilateral knee pain. The examiner found, upon range of motion testing, right knee flexion at 70 degrees with pain and extension at 5 degrees with pain and left knee flexion at 85 degrees with pain and full extension. No additional functional loss was noted upon repetitive use testing. Muscle strength and joint stability testing results were normal bilaterally. 

According to the Veteran's report, he has worn a right knee brace, as prescribed, since 1996 to maintain his stability due to his loss of balance and history of falling. He had reportedly sustained a fall in 2006. See June 2007 VA examination, November 2007 Notice of Disagreement, April 2012 Informal Hearing Presentation, and August 2012 VA examination. However, at his June 2014 VA examination, the examiner noted that he wore a hinged right knee brace and used a cane due to pain. In a June 2014 VA treatment record, the Veteran reported symptoms of pain and giving way in both knees, the latter of which now required that he wear a brace bilaterally (hinged on the right knee and sleeve on the left knee). The VA physician noted clinical findings of an antalgic gait with cane, normal extension bilaterally, and flexion at 45 degrees on the right and 90 degrees on the left. See June 2014 VA treatment record. In a May 2014 VA treatment record, the Veteran reported falling four times in the past 12 months due to his knees going out, but in a July 2014 VA treatment record, he stated that while he stumbled a little due to his knees, there was no actual fall.

In March 2015, the Veteran underwent a right arthroscopy with partial lateral meniscectomy. The Veteran had complaints of right knee pain, which was diffuse and worse with weight bearing and pivoting. The March 2015 private treatment record notes that the Veteran had been having locking and giving way in the right knee with pain primarily laterally. The Veteran's preoperative and postoperative diagnoses were tear of right knee lateral meniscus and loose body in the right knee. 

Following his March 2015 meniscectomy on his right knee, the Veteran was afforded another VA examination in November 2015. The Veteran reported that he wore his right knee brace everyday and his left knee brace several days in a week, bilateral knee stiffness, subjective weakness and give-way weakness (i.e., occasional falls), and an inability to walk or stand for longer than 10 minutes. Range of motion testing revealed flexion at 75 degrees and full extension with pain on the right and flexion at 90 degrees and negative 10 extension with pain on the left. Objective evidence of pain with weight bearing was noted. No deep knee bends, crossing of either ankle to opposite knee, or stepping up or down a single step could be performed due to knee pain. The left knee did not exhibit any additional functional loss upon repetitive use testing. However, the right knee showed a decreased limitation in range of motion with repetitive use, specifically flexion at 60 degrees. Also, on the right knee, additional functional loss exhibited by pain and lack of endurance was found. A reduction in muscle strength in the right knee was noted to be due to the Veteran's diagnosed right knee disability. The examiner identified residual meniscal surgical symptoms of frequent episodes of joint pain, frequent episodes of joint effusion, pain, limitation of motion, and give-ways. No anklyosis was noted. Functional impairment was subjectively reported to be based on symptoms of bilateral knee pain, weakness, give-way weakness, and occasional falls.

In a February 2016 VA treatment record, the Veteran reported difficulties climbing the stairs due to his hips and knees.

The Veteran underwent a VA examination in August 2017 pursuant to the Board's remand that was to include range of motion testing on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint in compliance with 38 C.F.R. § 4.59. Correia v. McDonald, 28 Vet. App. 158 (2016). The Veteran reported that he had to use a walker at home to get to the bathroom for 6 years, avoided stairs, wore braces on his left and right knee, could only walk 100 feet before resting, used a cane, and drove only twice a week for short distances. Range of motion testing revealed flexion at 80 degrees and extension at 15 degrees with pain on the right and flexion at 90 degrees and at 10 extension with pain on the left. Objective evidence of pain with weight bearing and localized tenderness or pain on palpation was noted. Neither knee exhibited any additional functional loss upon repetitive use testing. Additional functional loss exhibited by pain, fatigue, weakness, lack of endurance, and incoordination was found bilaterally. A reduction in muscle strength in the right knee was noted to be due to the Veteran's diagnosed right knee disability. A reduction in muscle strength in the left knee was noted. There was no ankylosis found. The examiner identified residual meniscal surgical symptoms of frequent episodes of joint effusion and meniscal tear. It was noted that the Veteran constantly used brace(s) and crutch(es) and occasionally used a walker. The examiner found evidence of pain on passive range of motion testing and when the knee was used in weight bear and non weight bearing. Functional impairment was subjectively reported to be limited standing, walking, and bending. Although the examination report did not contain the results of the passive and nonweightbearing ranges of motion, the examination is adequate to decide the claim. The diagnostic criteria for orthopedic conditions do not require the results of passive range of motion testing and do not discern between weightbearing and non-weightbearing, and do not consider range of motion of the opposite joint (if undamaged). The rating criteria for orthopedic conditions require consideration of ranges of motion, where applicable, and functional loss as set forth in 38 C.F.R. §§ 4.40 and 4.45. DeLuca v. Brown, 8 Vet. App. 202, 206 (1995). This information is provided in the August 2017 VA examination, and there has been substantial compliance with the June 2017 remand. See Stegall v. West, 11 Vet. App. 268 (1998); Dyment v. West, 13 Vet. App. 141, 146-47 (1999). 

Left Knee Disability

Based on a careful review of the subjective and clinical findings, the Veteran's service-connected left knee disability does not warrant a higher than 10 percent evaluation for limitation of motion under Diagnostic Codes 5260 or 5261. In other words, throughout the appeal period, the clinical findings do not demonstrate that the Veteran's left knee disability manifested flexion limited to 30 degrees or extension limited to 15 degrees. In fact, with clinical evidence showing left knee flexion of no less than 85 degrees and no limitation in extension, it establishes that the Veteran's left knee disability is more consistent with a noncompensable evaluation based on limitation of motion findings. Furthermore, the objective findings, throughout the appeal period, showed no evidence of functional loss due to pain, fatigue, weakness, lack of endurance, or incoordination. See Deluca, 8 Vet. App. at 206; see also 38 C.F.R. §§ 4.40, 4.45. Nevertheless, the Veteran's left knee disability continued to experience painful motion throughout the appeal period; therefore, a 10 percent evaluation is still appropriate based on 38 C.F.R. § 4.59, which provides for a minimum compensable evaluation for such painful motion. Thus, the overall objective findings show that the Veteran is not entitled to a higher than 10 percent evaluation for his left knee disability under Diagnostic Codes 5260 or 5261, or on the basis of functional loss. 

Taking into consideration the other applicable diagnostic codes, there was no clinical evidence of record that the Veteran had undergone removal of semilunar cartilage of the left knee (Diagnostic Code 5258) and his subjective complaints of left knee instability (Diagnostic Code 5257) were not substantiated by any objective findings. Therefore, the Veteran is also not entitled to a higher or separate evaluation for his left knee disability under other diagnostic codes. 

Right Knee Disability

For the appeal period from March 29, 2007 to November 23, 2015, the evidence does not show grounds upon which to increase the Veteran's current 10 percent disability rating for right knee with residuals of ACL and meniscal surgeries with DJD. As previously discussed, Diagnostic Code 5259 only provides for a 10 percent evaluation. Further, during this appeal period, the Veteran's right knee with residuals of ACL and meniscal surgeries with DJD has not been manifested by frequent episodes of "locking," pain, and effusion. Accordingly, the Veteran is not entitled to a disability rating higher than 10 percent under Diagnostic Code 5259. According to the clinical findings, the Veteran's only avenue for a higher evaluation would be based on limitation of motion under Diagnostic Code 5260. The Veteran is already in receipt of a separate evaluation for limitation of extension during this period, so discussion of a higher evaluation for limitation of extension is not appropriate here. However, at no time during the relevant appeal period did the Veteran's right knee manifest flexion limited to 30 degrees to warrant a higher 20 percent evaluation.

For the appeal period from March 29, 2007 to June 29, 2014, the Veteran's right knee flexion was, at most, limited at 110 degrees with pain. From November 4, 2015, the Veteran's right knee flexion was, at most, limited at 60 degrees as evidenced by the February 2015 VA examination where the Veteran's right knee range of motion decreased with repetitive use as demonstrated by flexion at 60 degrees (a loss of 15 degrees from initial range of motion testing). Thus, the Board finds that the Veteran is not entitled to a separate disability rating from March 29, 2007 to June 29, 2014 and from November 4, 2015, based on limitation of flexion.. 

For the appeal period from November 24, 2015 to August 14, 2017, the 20 percent rating under Diagnostic Code 5258 is the maximum available rating under that Code. Further, the Veteran does not warrant a separate disability rating for right knee limitation of extension, because the evidence does not show that the Veteran has right knee extension limited to 10 degrees. 

However, from August 15, 2017, the evidence shows that a separate 20 percent disability rating is warranted for the Veteran's right knee limitation of extension. This determination is based on the August 2017 VA examination, in which the Veteran's right knee extension was limited to 15 degrees, with pain. Thus, the Veteran is entitled to a separate 20 percent disability rating under Diagnostic Code 5261. 

Recognizing the Veteran's consistent and credible reports of right knee instability and constant use of a right knee brace, the Board has considered whether a separate evaluation under Diagnostic Code 5257 is appropriate at any time during the period. Objective findings, throughout the appeal period, did not show that the Veteran had recurrent subluxation or lateral instability. Thus, the Veteran is not entitled to a separate disability rating for right knee instability under Diagnostic Code 5257. 

TDIU

The Veteran is seeking a TDIU based on his service-connected disabilities.

Total disability means that there is present any impairment of mind or body sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. §§ 3.340, 415. A substantially gainful occupation has been defined as "employment at which non-disabled individuals earn their livelihood with earnings comparable to the particular occupation in the community where the Veteran resides." M21-1 VA Adjudication Procedure Manual, Part IV.ii.2.F.1.c. (Updated September 24, 2015). It also has been defined as "an occupation that provides an annual income that exceeds the poverty threshold for one person, irrespective of the number of hours or days that the Veteran actually works and without regard to the Veteran's earned annual income." Faust v. West, 13 Vet. App. 342 (2000). Marginal employment shall not be considered substantially gainful employment. Substantially gainful employment is defined as work that is more than marginal, which permits the individual to earn a "living wage." Id. Marginal employment is defined as an amount of earned annual income that does not exceed the poverty threshold determined by the Census Bureau. 38 C.F.R. § 4.16(a). 

When jobs are not realistically within his physical and mental capabilities, a veteran is determined unable to engage in a substantially gainful occupation. Moore v. Derwinski, 1 Vet. App. 356 (1991). In making this determination, consideration may be given to factors such as the veteran's level of education, special training, and previous work experience, but not to age or impairment caused by non-service-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19; Van Hoose v. Brown, 4 Vet. App. 361 (1993).

Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities provided that if there is only one such disability, this disability shall be ratable at 60 percent or more, and that, if there are two or more such disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. For the purpose of one 60 percent or one 40 percent disability in combination, disabilities resulting from a common etiology or a single accident will be considered as one disability. 38 C.F.R. § 4.16(a). 

The Board notes that the ultimate question of whether a Veteran is capable of substantially gainful employment is not a medical one; that determination is for the adjudicator. Geib v. Shinseki, 773 F.3d 1350, 1354 (Fed. Cir. 2013). Thus, the VA examiners' conclusions are not dispositive. However, the observations of the examiners regarding functional impairment due to the service-connected disability go to the question of physical or mental limitations that may impact his ability to obtain and maintain employment.

The Veteran filed his claim for a TDIU on October 23, 2015.

From October 23, 2015, the Veteran's service-connected disabilities have a combined evaluation of 70 percent. The Veteran's service-connected disabilities result from a single body system, orthopedic, and therefore qualify as one disability under 38 C.F.R. § 4.16(a). Combined together, they result in a 70 percent evaluation; therefore, they satisfy the schedular requirements for a TDIU.

According to the Veteran's October 2015 VA Form 21-8940, the Veteran's contends that all of his service-connected orthopedic disabilities prevent him from securing or following any substantially gainful occupation. He was last employed in August 2006 as a full-time systems equipment maintenance specialist. The employer indicated that the Veteran was laid off. He worked for the company from October 2005 to August 2006. He earned from $69,000 to $73,383 during the last the last 12 months of employment. See VA Form 21-4192. He indicated that he has not tried to obtain other employment since he became too disabled to work in 2006. The Veteran did not provide any other work history. He did not indicate his level of education or training. 

A February 2015 VA spine examination reflects that the Veteran was able to dress himself, shower in the standing position, and drive (maximum 25 miles). The examiner noted that the Veteran had a history of periodic flare-ups of back pain (usually at night), which resulted in periodic bedrest (two to three times a week for a short period of time during the day). 

In November 2015, the Veteran obtained VA examinations for his service-connected lumbar spine disability, bilateral hip disabilities, and bilateral knee disabilities. The Veteran was described as morbidly obese. He used a cane for his lumbar spine and knees. A hinged brace was worn on his right knee chronically and a sleeve was used for his left knee several days a week "when [he was] out doing things." The examiner noted that the Veteran "walks well with right hand cane." He walked 150 yards nonstop to the examination, but the Veteran said that he usually only walked to his mailbox (50 feet) or into a store briefly. No house or yard work was performed. He lived in a first floor condo and did not use stairs in his daily life. 

At his examination, the Veteran reported having constant low back pain, which sometimes radiated into his hips. He had intermittent bilateral hip pain unrelated to his back pain. Sleeping on either side hurt the dependent hip. No medical or self-help treatment for his hips was obtained. Right knee pain limited his walking distance or standing for more than 10 minutes. The Veteran reported occasional falls due to his right knee, but there were no left knee symptoms of giving way or locking. 

In March 2015, the Veteran had received a right knee arthroscopic partial lateral meniscectomy. As of May 1, 2015, his restrictions had been removed and he was released to return to work, if he had a job. See November 2015 VA examination and November 2015 Report of General Information. 

Noting that the Veteran had retired in 2006 as a computer equipment specialist, which reportedly involved "fairly active lifting, carrying, not sedentary," the November 2015 examiner indicated that the Veteran had been fired or laid off for non-medical reasons and never had Social Security disability. 

At an August 2017 VA examination for his service-connected bilateral knee disabilities, the Veteran reported that he wore bilateral knee braces, had used a walker at home to get to the bathroom for 6 years, avoided stairs, could only walk 100 feet before resting, used a cane in his right hand, and drove only twice a week for short distances. He also stated that his bilateral knee disabilities limited his standing, walking, and bending. 

Taking into consideration the Veteran's multiple service-connected orthopedic disabilities, the Board finds that the evidence does not demonstrate that the Veteran is precluded from securing or maintaining substantially gainful employment. Although the Veteran has not worked since 2006, the evidence shows that the Veteran either retired or was laid off for non-medical reasons from his last position. His position as a computer equipment specialist reportedly involved lifting and carrying and was not sedentary work. He did not provide any other employment history or educational information. Nevertheless, based on his earnings of approximately $70,000, the Board can surmise that the Veteran has a high level of work experience, education and training that would be commensurate with such earnings. The Board notes that the Veteran has not indicated his level of education on the submitted VA Form 21-8940. However, the Board notes that the record does not otherwise indicate that Veteran does not have the knowledge and skills to obtain substantially gainful employment that could accommodate any physical restrictions. 

As for his current medical condition, his service-connected lumbar spine, bilateral hip, and bilateral knee disabilities did not appear to significantly impact his daily life. He was able to drive, albeit limited distances. He could dress himself and shower. The Veteran's ability to walk and stand for prolonged periods was limited. However, his ability to perform his activities of daily living independently suggests that his service-connected disabilities were not significantly debilitating. Notably, following his March 2015 right knee surgery, he was released to return to work in May 2015 without restrictions. 

Based on the foregoing, the Board concludes that the Veteran is not precluded from the securing and following substantially gainful employment due to his service-connected disabilities, and thus TDIU is not warranted. In summary, the preponderance of the evidence weighs against finding in favor of the Veteran's claim for a TDIU. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 



ORDER

Entitlement to a disability rating in excess of 10 percent for a left knee disability is denied. 

Prior to November 24, 2015, entitlement to a disability rating in excess of 10 percent for right knee with residuals of ACL and meniscal surgeries with DJD is denied. 

Entitlement to a disability rating in excess of 10 percent for right knee limitation of extension prior to November 24, 2015 is denied.

A rating in excess of 20 percent as of November 24, 2015 for right knee limitation of extension, DJD, and residuals of ACL and meniscal surgeries is denied.

As of August 15, 2017, entitlement to a separate 20 percent disability rating for right knee limitation of extension is granted.

Entitlement to a TDIU is denied. 



____________________________________________
Lesley A. Rein
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs